No. 04-10577

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff/Appellee,

v.

FRAZER SCOTT PICCOLO,
Defendant/Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA, D.C. No. CR-04-00083-LRH
The Honorable Larry R. Hicks, *United States District Judge.*

**PETITION FOR REHEARING *EN BANC***

> DANIEL BOGDEN
>   United States Attorney
>   District of Nevada
>
> ROBERT L. ELLMAN
>   Appellate Chief
>   District of Nevada
>
> PATRICK WALSH
>   Assistant United States Attorney
>   333 Las Vegas Blvd. South, Ste. 5000
>   Las Vegas, NV 89101
>   (702) 3880-6336

**EXHIBIT "1"**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REASONS FOR GRANTING THE PETITION . . . . . . . . . . . . . . . . . . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ADDENDA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

## CASES

*American Vantage Companies, Inc. v. Table Mountain Rancheria*,
   292 F.3d 1091 (9th Cir. 2002) .............................. 7

*James v. Sunrise Hospital*, 86 F.3d 885 (9th Cir. 1996) .............. 7

*Thomas v. United States*, 543 U.S. 1111 (D.C. Cir. 2003) ............ 7

*United States v. Amparo*, 68 F.3d 1222 (9th Cir. 1995) ................ 2

*United States v. Bryant*, 310 F.3d 550 (7th Cir. 2002) ............... 7

*United States v. Chavez-Vernaza*, 844 F.2d 1368 (9th Cir. 1987) ........ 7

*United States v. Dickerson*, 77 F.3d 774 (4th Cir. 1996) .............. 7

*United States v. Gary*, 341 F.3d 829 (8th Cir. 2003) ................. 7

*United States v. Gay*, 251 F.3d 950 (11th Cir. 2001) ................ 7

*United States v. Gosling*, 39 F.3d 1140 (10th Cir. 1994) ............. 6, 8

*United States v. Harris*, 165 F.3d 1062 (6th Cir. 1999) .............. 7

*United States v. Jackson*, 301 F.3d 59 (2d Cir. 2002) ............... 6, 8

*United States v. Kelly*, 422 F.3d 889 (9th Cir. 2005) ................ 4

*United States v. Luster*, 305 F.3d 199 (3d Cir. 2002) ................ 6

*United States v. Mitchell*, 113 F.3d 1528 (10th Cir. 1997) ............ 7

*United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006) ......... 1, 4, 5, 6

*United States v. Ruiz*, 180 F.3d 675 (5th Cir. 1999) ................ 7

*United States v. Thomas*, 333 F.3d 280  (D.C. Cir. 2004) . . . . . . . . . . . . 8, 9

*United States v. Thomas*, 361 F.3d 653 (D.C. Cir. 2004), remanded  . . . 7, 9

*United States v. Winn*, 364 F.3d 7 (1st Cir. 2004)  . . . . . . . . . . . . . . . . . . . 6

## STATUTES and RULES

18 U.S.C. § 751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 10

Fed. R. App. P. 35(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## MISCELLANEOUS

U.S.S.G. § 4B1.2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 9

U.S.S.G. § 2P1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

No. 04-10577

UNITED STATES OF AMERICA,

Plaintiff/Appellee,

v.

FRAZER SCOTT PICCOLO,

Defendant/Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEVADA

**PETITION FOR REHEARING *EN BANC***

**INTRODUCTORY STATEMENT**

The United States of America respectfully requests that the appeal resolved by the panel opinion issued on April 3, 2006, and reported as *United States v. Piccolo*, 441 F.3d 1084 (9th Cir. 2006), be reheard *en banc*. The panel's decision directly conflicts with the authoritative decisions of eleven other United States Courts of Appeals, and involves a question of exceptional importance to the administration of justice. *See* Fed. R. App. P. 35(b)(1)(B).

## STATEMENT OF THE ISSUE

Rejecting the view of other appellate circuits that have addressed the question, this panel held that the crime of escape under 18 U.S.C. § 751(a) is not categorically a "crime of violence" as defined by U.S.S.G. § 4B1.2(a)(2). This petition presents the question whether escape under 18 U.S.C. § 751(a) is categorically a "crime of violence."[1]

## STATEMENT OF THE CASE

A federal grand jury in Nevada indicted Defendant Frazer Scott Piccolo in March, 2004, charging him with one count of escape under 18 U.S.C. § 751(a). Piccolo pled guilty without a plea agreement on May 18, 2004.

The escape charge arose from Piccolo's "walkaway" escape in 2003 from the Clark Center, a non-secure halfway house in Las Vegas. Piccolo resided at Clark Center because he was serving the remaining portion of a 63-month sentence for bank robbery. Piccolo left the Clark Center to attend a drug counseling session and failed to return. Ten months later he surrendered to authorities.

Prior to sentencing, the United States Probation Department and the United States Attorney took the position that Piccolo was a career offender because under

---

[1] The Ninth Circuit applies the categorical analysis to both prior and instant offenses. *See United States v. Amparo*, 68 F.3d 1222, 1224-26 (9th Cir. 1995).

2

section 4B1 of the United States Sentencing Guidelines ("U.S.S.G."), escape is a crime of violence. Subsection 4B1.2(a)(2) defines a crime of violence as a crime that "involves conduct that presents a serious potential risk of physical injury."

On September 13, 2004, the district court sentenced Piccolo to a 37-month prison term. The sentence reflects the district court's finding, over Piccolo's objection, that he is a career offender under U.S.S.G. § 4B1.2(a)(2). Defendant's career offender status increased the advisory guidelines sentencing range from 15-21 months to 37-46 months.

The district court noted that the facts attendant to Piccolo's walkaway escape were "far removed from a crime of violence." However, the district court relied on persuasive authority from numerous federal appellate courts outside of this Circuit which had applied U.S.S.G. § 4B1.2(a)(2) to the crime of escape under 18 U.S.C. § 751(a) and held the latter a categorical crime of violence. At that time, this Court had not yet published a decision on that issue. However, the First, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Tenth and Eleventh Circuits had all published decisions finding escape to be a categorical crime of violence. No federal appellate circuit had taken the contrary position.

Piccolo appealed his sentence, assigning error to the district court's finding that escape is a categorical crime of violence under U.S.S.G. § 4B1.2(a)(2).

On April 3, 2006, a panel of this Court reversed the district court's decision, holding that convictions for walk-away escape "do not pose an automatic risk of danger and therefore do not categorically raise a serious potential risk of physical harm." *Piccolo*, 441 F.3d at 1088. The decision acknowledges the contrary holding in published decisions by nine of its sister circuits. *Id.* at 1089.

The panel's decision recognizes that the federal escape statute "does not differentiate between violent and non-violent escapes" and finds that walkaway escapes present circumstances "of an entirely different order of magnitude" than circumstances in an escape from jail or prison. *Id.* at 1088.

The decision relies on *United States v. Kelly*, 422 F.3d 889, 891-92 (9th Cir. 2005) as analogous authority. *Kelly* held that a prior conviction for attempting to elude a police vehicle did not constitute a crime of violence under the *Taylor* categorical analysis. The Washington statute in *Kelly* criminalized "wanton and willful disregard for the lives or property of others while attempting to elude a pursuing police vehicle." 422 F.3d 889, 893. The panel held that this was not categorically a crime of violence because (1) the "wanton and willful" language involved only an inference as to the defendant's mental state, and did not require that the defendant's conduct pose any actual danger or create a serious risk of harm to

4

anyone; and (2) the conduct could involve risk to persons *or property,* while the narrower guidelines definition encompassed only risk to persons.

The panel found *Kelly* controlling because the statute in *Kelly* involved close physical confrontation, thereby involving a greater possibility of violence than a walkaway escape, and because it included an endangerment provision absent from the escape statute. The panel concluded that these two factors in *Kelly* made escape under 18 U.S.C. § 751(a) "by comparison, even less likely to qualify as a 'crime of violence.'" *Piccolo*, 441 F.3d at 1088.

The panel also noted that the sentencing guideline applicable to escapes, U.S.S.G. § 2P1.1, provided for a four-level reduction in offense level where the escape is from a non-secure facility. *Piccolo*, 441 F.3d at 1088. It found this treatment of walkaway escapes irreconcilable with the view that such an escape would trigger career offender treatment where a defendant has two prior convictions for crimes of violence. The panel also considered that the guidelines excluded unlawful possession of a firearm by a felon as a crime of violence, *see* U.S.S.G. §4B1.2 cmt. n.1, a factor which rendered it "unlikely" that the guidelines intended to include a walkaway escape.

Finally, the panel considered nine other circuits' treatment of escape as a crime of violence. It noted that most of these circuits had likened escape to a "powder keg,

5

which may or may not explode into violence and result in physical injury to someone at any given time, but which always has the serious potential to do so." *Piccolo*, 441 F.3d at 1089 (quoting *United States v. Gosling*, 39 F.3d 1140, 1142 (10th Cir. 1994)). The panel rejected that view, finding that it "proves too much." *Id.*

Having concluded that escape did not qualify as a crime of violence under the categorical approach, the panel found no need to remand for application of the modified categorical approach because the record clearly established that Piccolo's escape was of the walkaway variety. *Piccolo*, 441 F.3d at 1090. Accordingly, the panel reversed and remanded for resentencing without addressing Piccolo's other claims.

## REASONS FOR GRANTING THE PETITION

The United States urges this Court to rehear this case *en banc*. This panel's decision conflicts with the unanimous view of all other courts of appeals with criminal jurisdiction. See *United States v. Winn*, 364 F.3d 7, 12 (1st Cir. 2004) (the "categorical approach forecloses the conclusion" that failure to return to a halfway house would not "present a serious risk of injury to another"); *United States v. Jackson*, 301 F.3d 59, 62 (2d Cir. 2002) (escape qualifies as a "violent felony" under the Armed Career Criminal Act); *United States v. Luster*, 305 F.3d 199, 202 (3d Cir. 2002) (walk-away escape is categorically a crime of violence because it presents a

6

serious potential risk of physical injury to another); *United States v. Dickerson*, 77 F.3d 774, 777 (4th Cir. 1996); *United States v. Ruiz*, 180 F.3d 675, 676-77 (5th Cir. 1999); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999); *United States v. Bryant*, 310 F.3d 550, 554 (7th Cir. 2002) (failure to report back to halfway house constitutes a crime of violence because every escape involves a serious potential risk of physical injury to another); *United States v. Gary*, 341 F.3d 829, 836 (8th Cir. 2003); *United States v. Mitchell*, 113 F.3d 1528, 1533 (10th Cir. 1997); *United States v. Gay*, 251 F.3d 950, 954-55 (11th Cir. 2001) (per curiam); *United States v. Thomas*, 361 F.3d 653, (D.C. Cir. 2004), remanded for reconsideration in light of *Booker*, by *Thomas v. United States*, 543 U.S. 1111 (2005). The decisions in *Dickerson*, *Ruiz*, *Bryant*, *Gary* and *Thomas* apply the categorical analysis to the federal escape statute. The other cited opinions apply it to similar state escape statutes, i.e., escape statutes that do not distinguish between walkaway and other types of escape.

This Court has expressed the view that "there is virtue in uniformity of federal law as construed by the federal circuits," *American Vantage Companies, Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (quoting *James v. Sunrise Hosp.*, 86 F.3d 885, 889 (9th Cir. 1996)), and that "absent a strong reason to do so, [it] will not create a direct conflict with other circuits." *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987). Accordingly, this Court

7

should have the opportunity to reconsider *en banc* whether it wishes to stand alone on this question. Specifically, the United States urges this Court to consider, as the other courts of appeals have, that escape is a continuing offense. It does not end at the moment the prisoner makes his getaway, but rather continues while the escaped prisoner remains at large in the community, eluding recapture and perhaps being pursued, and through to the conclusion of the often-confrontational event of recapture or surrender. As the Second Circuit noted:

> An inmate who escapes by peacefully walking away from a work site will (if he can) be inconspicuous and discreet, and will (if he can) avoid confrontation and force. But escape invites pursuit; and the pursuit, confrontation, and recapture of the escapee entail serious risks of physical injury to law enforcement officers and the public.

*Jackson,* 301 F.3d at 63. The Tenth Circuit similarly noted that

> [a] defendant who escapes from a jail is likely to possess a variety of supercharged emotions, and in evading those trying to recapture him, may feel threatened by police officers, ordinary citizens, or even fellow escapees. Consequently, violence could erupt at any time. Indeed, even in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody.

*United States* v. *Gosling,* 39 F.3d at 1142.

Although the panel quoted since-disavowed dicta in a D.C. Circuit case that the "powder-keg" theory "proves too much," *see* 411 F.3d at 1089(quoting *United States*

8

v. *Thomas*, 333 F.3d 280, 282 (D.C. Cir. 2003), it did not explain what it meant by its use of that language, and did not discuss the phrase as the D.C. Circuit used it. In *Thomas*, the court suggested that the powder-keg theory "proved too much" because "[w]hile it may be true that the recapture of an escapee inherently contains a risk of violent encounter between the escapee and the arresting officers, the same is true as to the capture of any law breaker." *Ibid.* Under this rationale, the *Thomas* court opined, "one might argue that ... all crimes become crimes of violence."

The D.C. Circuit later rejected that dicta. In a case involving another defendant named "Thomas," the Court joined the other circuits in concluding that escape is categorically a crime of violence. The court reasoned that "the fact that the defendants can hypothesize circumstances in which escape can be committed without either force or risk of injury cannot be dispositive under § 4B1.2(a)," because that approach would "eviscerate the notion of a 'categorical' definition." *United States v. Thomas*, 361 F.3d 653, 658 (D.C. Cir. 2004). The court pointed out that many offenses specifically enumerated in the guideline as crimes of violence can, in fact, be committed under circumstances that do not present a serious risk of injury:

> It is true, as the defendants contend, that a person can escape without force or serious risk of injury to anyone by simply walking away from an unguarded halfway house; he may also peacefully end his offense by waiting until the coast is clear and returning of his own volition. But the same is true of the individual who commits burglary of a dwelling: he

9

> can wait until the residents are on vacation and enter the house unarmed. The same is also true of the arsonist, who, with care, can avoid serious risk of physical injury to another by limiting his fires to isolated, abandoned buildings. * * * And injury can likewise be avoided by the extortionist - who can commit his crime by threatening to damage only the reputation of his victim, and who can target only the meek and the weak.

*Id.* at 659-60. So it is with escape under 18 U.S.C. § 751(a). Instead of asking whether "one can postulate a nonviolent hypothetical scenario," the court reasoned, the proper "benchmark should be the possibility of violent confrontation." *Id.* at 659. And for that inquiry, the court found the specific offenses enumerated in the guideline instructive. Applying the interpretative canons of *ejusdem generis* ("of the same kind or class") and *noscitur a sociis* (a word is "known by its associates") to the catch-all provision following the list of specific offenses, the court framed the inquiry as whether "the offense of escape - as a category - carries appreciably less risk of injury to another than do the listed crimes." And with the recognition that escape is a continuing offense, the court answered in the negative:

> [W]e have no basis for concluding that the risk of physical injury during an escape is any less than during a burglary, arson, or extortion. Like burglary of a dwelling or arson, a defendant *may* accomplish an escape in the safest possible way. But just as the cautious burglar may be startled by the unexpected return of the homeowner, or the careful arsonist surprised by a fire that spreads out of control, the stealthy escapee may suddenly be confronted by police officers sent to apprehend him, leading to injury to the officers or bystanders.

10

*Id.* at 660. The other courts of appeals have, unanimously and without exception, concluded that escape is an offense that presents a serious potential risk of physical injury. The Ninth Circuit should do the same.

## CONCLUSION

For the reasons stated, the United States urges this Court to grant this petition and hear the appeal in this case *en banc*.

Respectfully submitted,

DANIEL BOGDEN
  United States Attorney
  District of Nevada

PATRICK WALSH
  Assistant United States Attorney
  District of Nevada

By: _____
ROBERT L. ELLMAN
  Appellate Chief, District of Nevada
  United States Attorney's Office
  333 Las Vegas Blvd. South, Suite 5000
  Las Vegas, NV 89101
  Tel: (702) 388-6336